# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

MICHAEL J. LINDELL,              )
                                 )
            Plaintiff,           )
                                 )            _____ Case No. 22-CV-00028
v.                               )
                                 )
NANCY PELOSI, in her official capacity as )
Speaker of the United States House of )
Representatives;                 )            _____ **SECOND**
                                 )            **AMENDED COMPLAINT FOR**
BENNIE G. THOMPSON, in his official )         **DECLARATORY AND**
capacity as Chair of the Select Committee )   **INJUNCTIVE RELIEF**
to Investigate the January 6th Attack on )
the United States Capitol;       )
                                 )
ELIZABETH L. CHENEY, in her official )
capacity as a member of the United )
States House of Representatives; )
                                 )
ADAM B. SCHIFF, in his official capacity )
as a member of the United States House )
of Representatives;              )
                                 )
JAMES B. RASKIN, in his official capacity )
as a member of the United States House )
of Representatives;              )
                                 )
SUSAN E. LOFGREN, in her official capacity )
as a member of the United States House )
of Representatives;              )
                                 )
ELAINE G. LURIA, in her official capacity )
as a member of the United States House )
of Representatives;              )
                                 )
PETER R. AGUILAR, in his official capacity )
as a member of the United States House )
of Representatives;              )
                                 )
                                 )

STEPHANIE MURPHY, in her official )
capacity as a member of the United States )
House of Representatives; )
)
ADAM D. KINZINGER, in his official )
capacity as a member of the United States )
House of Representatives; )
)
SELECT COMMITTEE TO INVESTIGATE )
THE JANUARY 6th ATTACK ON THE )
CAPITOL OF THE UNITED STATES, a )
body established by the United States )
House of Representatives; )
)
and )
)
VERIZON ~~WIRELESS COMPANY, a~~COMMUNICATIONS INC.    )
~~division of Verizon Communications Inc.;~~    )
)
            Defendants. )

_____

## INTRODUCTION

1.      Plaintiff, Michael J. Lindell, has been notified by Defendant Verizon ~~Wireless Company~~Communications Inc. ("Verizon") that Verizon received a subpoena ("Subpoena") from the Individual Defendants,[1] who are acting as the Select Committee to Investigate the January 6th Attack on the United States Capitol ("Select Committee"). The Subpoena demands that Verizon produce certain records associated with a cell phone number regularly used by Mr. Lindell. The cell number was assigned for Mr. Lindell's use by Verizon's subscriber My Pillow, Inc.

_____

[1] The "Individual Defendants" are Defendant Representatives Pelosi, Thompson, Cheney, Schiff, Raskin, Lofgren, Luria, Aguilar, Murphy, and Kinzinger.

2.      Mr. Lindell brings this action seeking declaratory and injunctive relief to invalidate the Subpoena on several grounds and to prohibit its enforcement.  In the alternative, Mr. Lindell seeks an opportunity to review the information sought by the Subpoena in advance of any production by Verizon so that he may assert any applicable claim of attorney-client or other privilege before the information is produced to the Select Committee.

3.      The Subpoena requires Verizon to produce all records of communications using the designated cell phone number for the period November 1, 2020, to January 31, 2021.

4.      Mr. Lindell, in association with others who share his beliefs, has been and continues to be involved in efforts to raise awareness of alleged irregularities occurring in the November 2020 elections and to protect the constitutional rights of those who are speaking out about such issues. Those efforts include public and private statements by Mr. Lindell and individuals with whom he has associated and who share a common concern about election irregularities. They have been working together to alert the public and to petition their government for a redress of their grievances.

5.      Mr. Lindell has widely publicized that his 2020 election integrity activities are motivated, in part, by his strongly held political and religious beliefs, which he has associated with others to practice. He has organized national religious leaders and others with similar beliefs to join him in his 2020 election integrity activities. Mr. Lindell's activities are widely known. His speeches and publications regularly articulate his political and religious belief and the scriptural basis for it. He regularly associates with others

3

holding similar political and religious beliefs to organize 2020 election integrity activities. Mr. Lindell also associates with numerous other persons who may or may not be public figures, whose identity and association with him is not publicly known, who wish to have such contacts remain confidential. Disclosure of those contacts will chill if not end such informational and organizational efforts. Mr. Lindell engages in direct lobbying of elected officials, and encourages others to do the same.  Compelling disclosure of Mr. Lindell's political and religious activities and associations is a violation of his First Amendment Freedom of Association and Assembly rights, as well as Free Exercise of Religion, Freedom of Speech and Freedom of Pressrights.

6.      Some who have associated with Mr. Lindell to assist and inform his exercise of free speech and political and religious expression have intentionally kept their association with him confidential, out of fear that they will suffer retaliation, harassment, and loss if their association with Mr. Lindell is made public. Mr. Lindell, likewise, desires to protect the confidentiality of those who provide him with assistance and information, so that citizens are not deterred from providing him with assistance and information in the future.

7.      Mr. Lindell has produced and publicized four documentaries presenting evidence that electronic voting machines were hacked or used to alter the outcome of the November 2020 elections: Absolute Proof, Absolute Interference, Scientific Proof, and Absolutely 9-0. He received and incorporated information from confidential sources during the production of those documentaries. He has established an online news network, frankspeech.com, with millions of unique visitors. That network provides a platform for

4

dissemination of news and commentary and for discussion of evidence of alleged election fraud, the vulnerabilities of electronic voting and tabulation systems, and the ongoing investigations of election fraud in various States, in addition to other news of the day. As a journalist and publisher, Mr. Lindell has heightened First Amendment protections, as well as the right and obligation to protect his sources.

8.     The Subpoena requires the production of records for a period after January 6, 2021, which production has no reasonable relation to the scope and purpose of the Select Committee's investigation of the January 6, 2021, attack on the Capitol.

9.     Enforcement of the Subpoena would violate the rights of Mr. Lindell and of his sources to freedom of speech, press, political and religious expression, and to associate with others to advance their shared beliefs. These rights are guaranteed by the First Amendment.

10.     Enforcement of the Subpoena would violate the right of Mr. Lindell to freedom from unreasonable searches and seizures, which is guaranteed by the Fourth Amendment.

11.     In issuing the Subpoena, the Individual Defendants acted without authority because they were not validly organized as a House committee under the Rules of the United States House of Representatives, notably Rule X.5(a)(1) ("The standing committees shall be elected by the House . . . from nominations submitted by the respective party caucus or conference."). The Individual Defendants and the Select Committee thus have no legitimate power to issue enforceable subpoenas.

12.     In issuing the Subpoena, the Individual Defendants acted without authority because the Select Committee does not satisfy the requirements of House Resolution 503 that purports to establish the Select Committee. The Individual Defendants and the Select Committee have no legitimate power to issue enforceable subpoenas. Contrary to the requirements of H.R. 503, the minority leader of the House of Representatives was not consulted regarding the appointment of Select Committee members representing the minority, the required number of committee members was not appointed, and the House members appointed to the committee do not fulfill the partisan distribution requirements for the committee.

13.     Even if the Select Committee could issue subpoenas, the Subpoena exceeds the authority of the Select Committee because it requires production of records that are far beyond the scope of the Select Committee's investigation, constituting a veiled effort to conduct an unauthorized criminal investigation and an illegitimate effort to undermine the Individual Defendants' political opposition, neither of which is in furtherance of a valid legislative purpose.

14.     The Subpoena improperly demands that Verizon produce Mr. Lindell's private communications without first providing him a reasonable opportunity to review the communications to determine whether they are protected from production by the attorney-client and journalist's privileges.

## PARTIES

15.     Plaintiff, Michael J. Lindell, is a resident of the State of Minnesota and the Chief Executive Officer of My Pillow, Inc., which is a Minnesota corporation with its principal place of business in the State of Minnesota.

16.     Defendant Nancy Pelosi is a member of the United States House of Representatives who is currently serving as Speaker of the House and, as Speaker, appointed the members of the Select Committee.

17.     Defendant Bennie G. Thompson is a member of the United States House of Representatives who was appointed by Speaker Pelosi to chair the Select Committee and in whose name the Subpoena was issued.

18.     Defendants Elizabeth L. Cheney, Adam B. Schiff, James B. Raskin, Susan E. Lofgren, Elaine G. Luria, Peter R. Aguilar, Stephanie Murphy, and Adam D. Kinzinger are members of the United States House of Representatives who were appointed by the Speaker of the House to serve on the Select Committee.

19.     Defendant Verizon ~~Wireless Company is a division of Verizon~~ Communications Inc. ~~with~~has its principal place of business in the State of New Jersey and in the ordinary course of business provides wireless service to Mr. Lindell's cellular phone in the State of Minnesota. Verizon is the recipient of the Subpoena that seeks production of the telephone records of Mr. Lindell. The company is joined for the limited purpose of obtaining an injunction prohibiting it from producing records pursuant to an unconstitutional and illegal Subpoena.

## JURISDICTION AND VENUE

20.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 based upon Defendants' violations of Mr. Lindell's rights under the First and Fourth Amendments.

21.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2). A substantial part of the events that give rise to the claim occurred in Minnesota, which is where subscriber My Pillow, Inc. is located, and where Plaintiff was assigned the subject cell phone number, and where most of the communications on that number were sent or received.

## FACTUAL BACKGROUND

22.    Following the events at the Capitol on January 6, 2021, Defendant Thompson on May 14, 2021, introduced H.R. 3233 to establish a National Commission to Investigate the January 6 Attack on the United States Capitol Complex. His bill would have established a bipartisan body of ten members with an equal number of Democrats and Republicans. The legislative proposal was approved by the House of Representatives but rejected by the Senate on May 28, 2021.

23.    After the Senate failed to pass H.R. 3233, Speaker Pelosi introduced H. Res. 503 to establish the Select Committee. The resolution was approved by the House of Representatives on June 28, 2021. Unlike the failed H.R. 3233 that assured equal bipartisanship in the membership of a National Commission, H. Res. 503 directs the Speaker to appoint thirteen members to the Select Committee of which only five "shall be appointed after consultation with the minority leader."

24.     The minority leader of the House nominated five members of his party to serve on the Select Committee, but Speaker Pelosi refused to appoint any of these five. Instead, she appointed only nine members to the Select Committee, two of whom were Republican representatives who had voted to approve H. Res. 503. Neither had been nominated by the minority leader.

25.     As a result of Speaker Pelosi's actions, the Select Committee, which was supposed to include eight Democrats chosen by the leadership of that party and five Republicans chosen by the leadership of that party, instead consisted of four vacancies and a strikingly unbalanced partisan membership of seven Democrats chosen by their party leadership and two nominal Republicans not chosen by their party leadership. The minority leader of the House issued a statement on January 13, 2022, including the following: "This committee is not conducting a legitimate investigation as Speaker Pelosi took the unprecedented action of rejecting the Republican members I named to serve on the committee. It is not serving any legislative purpose. The committee's only objective is to attempt to damage its political opponents – acting like the Democrat Congressional Campaign Committee one day and the DOJ the next."

26.     With respect to the events of January 6, 2021, at the Capitol, H. Res. 503 authorized and directed the Select Committee to (1) investigate and report on the facts, circumstances, and causes of those events, including (a) the activities of agencies related to intelligence collection, analysis, and dissemination to various instrumentalities of government and (b) factors influencing or contributing to those events; (2) identify, review, and evaluate the causes of and lessons learned from those events; and (3) issue a final report

to the House with findings, conclusions, and recommendations for corrective measures, as well as any interim reports that the Select Committee may deem advisable.

27.   Mr. Lindell had no involvement whatsoever in the events that occurred at the Capitol on January 6, 2021.

28.   Defendant Thompson issued the Subpoena to Verizon for Mr. Lindell's telephone records with the concurrence of the other Individual Defendants.

29.   Verizon has advised Mr. Lindell that it will comply with the Subpoena if there is no challenge to the Subpoena filed in court by January 5, 2022.

## COUNT I
## Violation of the First Amendment

30.   Each of the foregoing paragraphs is incorporated as if fully set forth within this Count.

31.   The Subpoena cannot be enforced because it violates Mr. Lindell's right to free speech and political expression, his right to free exercise of religion, his right to free association, and his right to petition the government for redress of grievances, all of which are guaranteed by the First Amendment. The conjunction of these rights with Mr. Lindell's right to free exercise of religion on which they are based (*see* the Declaration of Independence: "endowed by their Creator with certain unalienable rights"), presents a hybrid situation in which the different individual liberties reinforce each other, making the Subpoena's intrusive demands qualitatively more offensive to the fundamental law that binds the House and its committees, and therefore violates multiple provisions of the First

Amendment to the Constitution. As with many people, Mr. Lindell's political beliefs are intertwined with his religious beliefs, and the two cannot easily be separated.

32.     The Subpoena requires Verizon to produce records of communications between Mr. Lindell and others with whom he has associated, including his confidential sources, for the purpose of engaging in political and religious expression. The Individual Defendants' purpose and effect in issuing the Subpoena is to discourage Mr. Lindell and those with whom he has associated from exercising their rights to free speech, political and religious expression, and continued association to coordinate speech and activity in furtherance of their political and religious objectives.

33.     The scope of the Subpoena is overbroad and intrusive. It would force disclosure of private communications between Mr. Lindell and persons with whom he has associated in pursuit of shared political and religious objectives without regard for whether those communications relate to the authorized subject and purposes of the Select Committee's investigation. Such forced disclosure would expose Mr. Lindell and his associates to harassment and retaliation for the exercise of their rights to exercise free speech, political and religious expression, free association and to petition their government for the redress of grievances.

34.     The Subpoena violates Mr. Lindell's First Amendment rights because its purpose and effect is to identify persons with whom Mr. Lindell has associated to advance their shared political and religious beliefs as they relate to the conduct of the 2020 election. Many of Mr. Lindell's associates wish to remain anonymous. The forced disclosure of their contact information would chill and potentially end their willingness to continue their

association with Mr. Lindell for the advancement of their shared political and religious beliefs.

35.     Mr. Lindell enjoys First Amendment protections as a journalist and publisher, which include the right to prevent the disclosure of the identity of his confidential sources and the information they provide to him. He objects to the Subpoena's demand for information about such sources and their communication of confidential information provided to him as a journalist and publisher. The disclosure of the telephone numbers of those affected would in itself constitute a violation of their right to free association. The breadth of the Subpoena encompasses records of communications with Mr. Lindell's confidential sources and, therefore, violates the protection provided by the First Amendment.

## COUNT II
## Violation of the Fourth Amendment

36.     Each of the foregoing paragraphs is incorporated as if fully set forth within this Count.

37.     The Subpoena cannot be enforced because it violates Mr. Lindell's Fourth Amendment right to be protected against unreasonable searches and seizures.

38.     The sweeping nature of the Subpoena requires the production of the private communications of Mr. Lindell with other private citizens that have no reasonable relation to the subject and purposes of the Select Committee's investigation. The Subpoena seeks communications of every kind, regardless of their relation to the Select Committee's

investigation, and constitutes a gross violation of Mr. Lindell's property rights and his constitutional right to privacy.

39.     Congress has no general or inherent authority to issue subpoenas for any purpose. Its subpoena authority is strictly limited to inquiries in furtherance of its legislative function and does not extend to inquiries intended to develop information in support of criminal investigations or prosecutions, to merely bring facts to light, or to harass and intimidate private citizens or political opponents.

40.     On information and belief, the Individual Defendants and Select Committee staff have been cooperating with the Department of Justice in the latter's investigation and prosecution of individuals suspected or accused of criminal offenses in connection with the events of January 6, 2021, at the Capitol.

41.     The Select Committee and the Individual Defendants have no authority to require the identification and production, from persons not identified as having had any involvement in the January 6, 2021, events at the Capitol, of private communications with no reasonable nexus to the authorized scope of the Select Committee's investigation.

42.     The Subpoena requires blanket disclosure of all communications over a three-month period without limitation to the authorized scope of the Select Committee's investigation and without restriction of the subject matter of those communications. The broad reach of the disclosure requirements of the Subpoena would not pass constitutional muster in a criminal proceeding, and should not be permitted in a congressional investigation. The Fourth Amendment provides a general right of privacy, in the context of both criminal and civil cases, where any governmental compulsion is involved.

13

43.   The Subpoena compels the production of records that are unrelated to the instrumentalities of crime, the fruits of crime, or contraband.  It constitutes a sweeping demand for records the disclosure of which would cause a substantial and illegal intrusion into the property and privacy rights of those communicating on the phone number at issue where the government has no superior property interest to theirs.

44.   The Fourth Amendment requires that items to be seized must be identified with particularity. The Subpoena's language demands the production of "[a]ll subscriber information for the Phone Number" and "all phone numbers, IP addresses, or devices that communicated with the Phone Number via delivered and undelivered inbound, outbound, and routed calls, messages, voicemail, and data connections." Such a demand is a plain violation of the Fourth Amendment's particularity requirement.

## COUNT III
## Violations of H. Res. 503

45.   Each of the foregoing paragraphs is incorporated as if fully set forth within this Count.

46.   Only a congressional committee that is duly organized by the United States House of Representatives has the authority to issue subpoenas. The Select Committee fails to qualify as an authorized congressional committee because it is in substantial violation of the requirements of H. Res. 503, the purported source of its authority. H. Res. 503 does not grant any authority *except* to a committee that meets the conditions established by the resolution. The Select Committee fails to meet those conditions.

47.     The Select Committee fails to meet the membership requirements of H. Res. 503. The Speaker failed to appoint the required total number of members for the committee, choosing to simply leave four appointments empty. The Speaker failed to appoint the required number of members from the minority party, choosing to appoint only two. The Speaker failed to complete the required process of consultation with the minority leader in selecting minority members for the committee.

48.     Only a committee with the appropriate number of members, appointed through the appropriate process, and reflecting the appropriate balance of partisan membership satisfies the conditions established by H. Res. 503 for the committee to exercise a subpoena power on behalf of the House of Representatives. Because the Select Committee fails to meet these conditions, it does not possess any authority to issue subpoenas on behalf of the House, and the Subpoena is therefore unenforceable.

<u>**COUNT IV**</u>
<u>**Violations of Rules of the House**</u>

49.     Each of the foregoing paragraphs is incorporated as if fully set forth within this Count.

50.     The Subpoena is invalid because it was issued in violation of the Rules of the United States House of Representatives, particularly Rule X.5(a)(1), which requires bipartisanship in the appointment of House committees. This requirement is designed to prevent abuses by committees, particularly when an excess of partisanship would violate the fundamental rights of citizens with whom the committees engage.

51.     The Select Committee is not a committee authorized pursuant to the Rules of the House of Representatives to issue subpoenas because it was not established in compliance with those Rules.

52.     None of the members of the Select Committee have been appointed after consultation by the Speaker with the minority leader of the House of Representatives. Each of the members has publicly revealed a personal view that the outcome of the Select Committee's investigation is predetermined.

## COUNT V
## Absence of Legitimate Legislative Purpose

53.     Each of the foregoing paragraphs is incorporated as if fully set forth within this Count.

54.     Issuance of the Subpoena by Chairman Thompson was *ultra vires* because it was not in furtherance of a legitimate legislative purpose.

55.     The Subpoena purports to be a legislative subpoena. Congress has no inherent or general power to issue subpoenas but may do so only in furtherance of a legitimate legislative purpose. A legislative subpoena must be issued in furtherance of a legitimate legislative purpose.

56.     A legislative subpoena cannot qualify as a legitimate exercise of legislative power merely by virtue of the investigation that is offered as the reason for the subpoena. A legislative subpoena may be improper even when issued in the course of an otherwise proper congressional investigation. Each legislative subpoena must be assessed

individually, to determine whether the information it demands is sought in furtherance of a legitimate legislative purpose.

57.     Exposing information for the mere sake of exposure does not justify the issuance of a legislative subpoena.

58.     Enforcement of criminal laws, which is a peculiar function of the Executive Branch, does not justify the issuance of a legislative subpoena.

59.     The Subpoena is unauthorized, invalid, and unenforceable because its true purpose is not a legitimate legislative purpose. The information it seeks is calculated to expose information for the mere sake of exposure, to harm the Committee's political opponents, to expose information to assist ongoing criminal investigations and prosecutions by the Department of Justice, to inflict harm upon Mr. Lindell and those he has associated with to exercise constitutional rights, and most of all obtain partisan political advantage. None of these are legitimate purposes for a legislative subpoena.

## COUNT VI
## Unenforceable Coverage Period

60.     Each of the foregoing paragraphs is incorporated as if fully set forth within this Count.

61.     In the alternative, even if the Subpoena was properly issued by the Select Committee, it is unenforceable because it demands production of records which have no reasonable relation to the purposes set forth in H. Res. 503. The Subpoena seeks records relating to communications occurring after January 6, 2021, the date of the events at the Capitol which the Select Committee is purportedly tasked to investigate. Communications

occurring after that date are not reasonably related to the investigations of how those events came to be.

62.     The Subpoena is, therefore, invalid and unenforceable to the extent is requires production of records of communications occurring after January 6, 2021.

## COUNT VII
## Assertion of Privileges Precluded

63.     Each of the foregoing paragraphs is incorporated as if fully set forth within this Count.

64.     In the alternative, even if the Subpoena was properly issued by the Select Committee, the Subpoena improperly requires the production of records of communications without providing an opportunity for Mr. Lindell to review those records to determine whether there are privileged attorney-client communications, or information protected by any other privilege or constitutional right, included in that production.

65.     Mr. Lindell is entitled to assert any applicable privileges and constitutional rights regarding communications covered by the Subpoena's requirements.

66.     To the extent the Subpoena requires production of records of all communications for the period November 1, 2020, to January 31, 2021, without allowing review by Mr. Lindell for attorney-client, journalist's, or any other applicable privilege and an opportunity to assert those privileges not to produce such records, the Subpoena is invalid and unenforceable.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Lindell requests that the Court enter judgment in his favor and against Defendants, and order the following relief:

a.      Entry of a declaratory judgment that the Subpoena violates the right to free speech, political and religious expression, free association, and petition for redress of grievances guaranteed to Mr. Lindell by the First Amendment;

b.      Entry of a declaratory judgment that the Subpoena violates Mr. Lindell's right to privacy guaranteed by the Fourth Amendment;

c.      Entry of a declaratory judgment that the action of the Individual Defendants in issuing the Subpoena was unlawful, invalid, and *ultra vires* because the Select Committee is organized and is functioning in violation of the Rules of the United States House of Representatives;

d.      Entry of a declaratory judgment that the Select Committee fails to meet the requirements of House Resolution 503, by which it was purportedly created, and therefore the Select Committee lacks authority to enforce as a subpoena any document issued by it;

e.      Entry of a declaratory judgment that the Subpoena is invalid and unenforceable because it does not serve a legitimate legislative purpose;

f.      Entry of a declaratory judgment that the Subpoena is invalid and unauthorized because the Individual Defendants exceeded their authority by requiring the production of records for the period following January 6, 2021;

g.      Entry of an order quashing the Subpoena as unlawful and invalid and prohibiting its enforcement;

h.      Entry of an order enjoining Verizon ~~Wireless Company~~Communications Inc. from producing communications in response to the Subpoena, and enjoining Verizon ~~Wireless Company~~Communications Inc. from producing any information concerning Mr. Lindell's phone number, without first providing Mr. Lindell an opportunity to review the information and assert any applicable claim of attorney-client, journalist's, constitutional, or other privilege;

i.      A grant of an award of costs and attorneys' fees incurred in this proceeding; and

j.      Such other relief as the Court deems just and proper.

DATED:  ~~January 14~~November 3, 2022         **PARKER DANIELS KIBORT LLC**

                                  By */s/ Andrew D. Parker*
                                      Andrew D. Parker (#195042)
                                      888 Colwell Building
                                      123 N. Third Street
                                      Minneapolis, MN 55401
                                      Telephone: (612) 355-4100
                                      Facsimile: (612) 355-4101
                                      parker@parkerdk.com

                                      *Counsel for Plaintiff Michael J. Lindell*

                                      **MCSWEENEY, CYNKAR & KACHOUROFF, PLLC**
                                      Patrick M. McSweeney*
                                      Christopher I. Kachouroff*
                                      3358 John Tree Hill Road
                                      Powhatan, VA 23139
                                      Telephone: (804) 937-0895
                                      patrick@mck-lawyers.com
                                      chris@mck-lawyers.com
                                      *** ~~To be admitted~~Admitted** *Pro Hac Vice*

*Counsel for Plaintiff Michael J. Lindell*

**WILLIAM J. OLSON, P.C.**
William J. Olson**
370 Maple Avenue, W., Suite 4
Vienna, Virginia 22180-5615
Telephone: (703) 356-5070
wjo@mindspring.com
~~* To be admitted~~*Admitted **Pro Hac Vice**

*Counsel for Plaintiff Michael J. Lindell*

**ALAN DERSHOWITZ, ESQ.**
Alan Dershowitz (MA Bar No. 121200)**
1575 Massachusetts Avenue
Cambridge, MA 02138
** ~~To be admitted~~Admitted **Pro Hac Vice**

*Of Counsel for Plaintiff Michael J. Lindell*